UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| DANIEL H. POLTROCK | : |
| Plaintiff, | : Civil Action No. 3:08-cv-1999-FLW |
| v. | : |
| NJ AUTOMOTIVE ACCOUNTS MANAGEMENT CO., INC.; DCH AUTOGROUP (USA) INC. | : |
| | : **OPINION** |
| Defendants. | : |

**WOLFSON, United States District Judge:**

Presently before the Court are motions by Defendant DCH Auto Group (USA) Inc. ("DCH") to dismiss federal and state claims brought by Plaintiff Daniel Poltrock ("Plaintiff") and an indemnification claim brought by Co-Defendant NJ Automotive Accounts Management Co., Inc. ("AAM"). In addition, DCH moves to sanction Plaintiff's counsel pursuant to Rule 11 of the Federal Rules of Civil Procedure. Plaintiff asserts that DCH is in violation of the Fair Debt Collection Practices Act arising from a debt DCH placed into collection against Plaintiff. Plaintiff also asserts several state law claims, including a claim pursuant to the New Jersey Identity Theft Prevention Act, and common law claims for intrusion upon seclusion, and negligent training and supervision. For the reasons set forth below, the Court grants DCH's motions to dismiss Plaintiff's claims, but denies the motion for sanctions. The Court also dismisses AAM's counterclaims for indemnification and contribution asserted against DCH.

**I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Since DCH moves to dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6), all facts alleged in the complaint are assumed to be true.

DCH sells and services high-end automobiles throughout the United States, including dealerships located throughout New Jersey. Sometime around May 2004, Plaintiff alleges that he applied for employment at a DCH dealership located in Maplewood, New Jersey. Compl. ¶14. On his employment application, Plaintiff listed Alan Sherman and David Hollander as personal references. Id. DCH hired Plaintiff, but soon after terminated his employment "on or about August 2004." Id. 16. In June 2004, Plaintiff purchased an automobile from DCH, which Plaintiff brought to DCH for servicing on or about July 13, 2006. Id. ¶17. DCH billed Plaintiff $173.68 for the maintenance and repairs. Id. On September 25, 2006, Plaintiff again took his automobile to DCH for service and was billed $421.12. Id. ¶18.

Thereafter, DCH placed the outstanding balance of $595.80 into collection sometime after Plaintiff failed to make payments towards either invoice. Plaintiff alleges that DCH increased that amount to $965.92. Id. ¶20. In an effort to collect Plaintiff's past-due account, DCH assigned the debt to AAM. Id. ¶21. On April 3, 2008, AAM sent a collection letter to Plaintiff, demanding he pay DCH $965.92. Id. A day later, AAM followed up on its letter with phone calls to the references Plaintiff had listed on his employment application with DCH, inquiring as to Plaintiff's whereabouts. Id. ¶¶22-23. DCH gave Hollander's and Sherman's numbers to AAM to facilitate the collection process. Both Sherman and Hollander informed Plaintiff's father that AAM had contacted them in an effort to find Plaintiff. Id. ¶¶23-24. On April 7, 2008, Plaintiff's father contacted an AAM representative who informed him that "Plaintiff had an

outstanding balance due to DCH and that they needed to immediately reach Plaintiff in order to arrange payment." Id. ¶26. The AAM representative stated that if Plaintiff or his father did not immediately pay DCH, AAM would initiate legal proceedings against Plaintiff. Id. ¶28. Plaintiff alleges that the AAM representative did not inform Plaintiff's father that AAM was a debt collector or that their conversation "was an attempt to collect a debt." Id. ¶30. On April 9, 2008, Plaintiff's attorney notified AAM that Plaintiff disputed the alleged amount owed, to which AAM responded in its April 15th correspondence, stating "that the dollar amount of this claim [was] $544.80." Id. ¶33.

Plaintiff commenced this action in the United States District Court for the District of New Jersey on April 22, 2008. Thereafter, Plaintiff filed an Amended Complaint with this Court on May 5, 2008. AAM filed its answer and crossclaims for indemnification and contribution against DCH on May 8, 2008. On May 30, 2008, DCH filed this Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6). In addition, DCH filed a Motion for Sanctions pursuant to Fed. R. Civ. P. 11 on June 10, 2008.

**II. DISCUSSION**

   **A. Standard of Review**

When reviewing a motion to dismiss on the pleadings, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (citation and quotations omitted). Recently, in Bell Atlantic Corporation v. Twombly, 127 S.Ct. 1955 (2007), the Supreme Court clarified the 12(b)(6) standard. Specifically, the Court "retired" the language contained in Conley

3

v. Gibson, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Id. at 1968 (quoting Conley, 355 U.S. at 45-46). Instead, the factual allegations set forth in a complaint "must be enough to raise a right to relief above the speculative level." Id. at 1965. As the Third Circuit has stated, "[t]he Supreme Court's Twombly formulation of the pleading standard can be summed up thus: 'stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element. This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." Phillips, 515 F.3d at 234 (quoting Twombly, 127 S.Ct. at 1965).

### B. Plaintiff's FDCPA Claims

Plaintiff asserts that DCH is in violation of the Fair Debt Collection Practices Act ("FDCPA").  Specifically, Plaintiff alleges that DCH, through AAM, made demands for an amount greater than Plaintiff owed, threatened to take legal action that it did not intend to take, employed deceptive and misleading means to collect the alleged debt, failed to disclose to Plaintiff's father, Sherman, or Hollander the reason for the phone calls, and unlawfully disclosed to Plaintiff's father that Plaintiff owed a debt. Nonetheless, DCH contends that Plaintiff fails to state a cause of action because it does not adequately allege that DCH is a debt collector under the FDCPA.

The FDCPA provides "a remedy for consumers who have been subjected to abusive, deceptive, or unfair debt collection practices by debt collectors." Pollice v. National Tax Funding, L.P., 225 F.3d 379, 400 (3d Cir. 2000) (citing Zimmerman v. HBO Affiliate Group,

4

834 F.2d 1163, 1167 (3d Cir. 1987)).  As a threshold requirement, a plaintiff seeking relief under the FDCPA must assert that the defendant is a "debt collector."  See Id. at 403; F.T.C. v. Check Investors, Inc., 502 F.3d 159, 171 (3d Cir. 2007).  The Act defines "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another" or "any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts." 15 U.S.C. § 1692(a)(6).  By contrast, a creditor is a person or business who "offers or extends to offer credit creating a debt or to whom a debt is owed."  Id.  As noted by the Third Circuit, absent from the definition of "debt collector" is a creditor seeking to collect its own debt.  See Pollice, 225 F.3d at 403 (citation omitted). In Aubert v. American General Financial, Inc., the Seventh Circuit elaborated on why creditors are excluded from the FDCPA's enforcement provisions:

> Creditors who collect in their own name and whose principal business is not debt collection. . .are not subject to the Act. . . .Because creditors are generally presumed to restrain their abusive collection practices out of a desire to protect their corporate goodwill, their debt collection activities are not subject to the Act unless they collect under a name other than their own.

137 F.3d 976, 978 (7th Cir. 1998).  In turn, courts have declined to extend FDCPA liability to those creditors who place debts in collection with a collection agency.  Challenger v. Experian Information Solutions, Inc., No. 06-5263, 2007 WL 895774, at *2 (D.N.J. March 22, 2007) (finding that a defendant " may 'place [its]...debts in collection[],' as [Plaintiff's] complaint alleges, without becoming a debt collector") (citation omitted); Jones v. Select Portfolio

Servicing, Inc., No. 08-972, 2008 WL 1820935, at *7 (E.D.Pa. April 22, 2008).

In the instant matter, Plaintiff alleges that DCH is a debt collector under the FDCPA. Alternatively, Plaintiff attempts to impose vicarious liability upon DCH for the alleged actions of its debt collector, AAM. However, Plaintiff argument fails on both grounds. First, Plaintiff's bald assertion that DCH is a "debt collector" is insufficient to confer liability under the FDCPA. See Experian, 2007 WL 895774 at *2 (finding a court "need not credit either 'bald assertions' or legal conclusions' in a complaint when deciding a motion to dismiss" in a case arising from a plaintiff asserting an FDCPA claim against a creditor) (citation omitted). Second, although Plaintiff states that "Defendants violated. . . the FDCPA," he fails to allege that DCH conducted itself in a way that would transform its status to a creditor who could be found liable under the FDCPA. See 15 U.S.C. § 1962a(6) (extending liability to a creditor who uses any name other than its own in collecting its own debts). In sum, Plaintiff's argument seeks to extend the bounds of the FDCPA beyond Congress' intent and well-settled case law:

> We do not think it would accord with the intent of Congress, as manifested in the terms of [the FDCPA], for a company <u>that is not a debt collector</u> to be held vicariously liable for a collection suit filing that violates the Act only because the filing attorney is a "debt collector." Section 1682k imposes liability only on a "debt collector who fails to comply with [a] provision of this subchapter...."The plaintiffs would have us impose liability on non-debt collectors too. This we decline to do.

Pollice, 225 F.3d at 404 (quoting Wadlington v. Credit Acceptance Corp., 76 F.3d 103, 108 (6th Cir. 1996) (emphasis in original).

Nonetheless, Plaintiff correctly asserts that a "creditor [who] does something improper" may be found liable under the FDCPA. See 15 U.S.C. § 1962a(6). However, this extremely narrow

6

exception applies in instances where a creditor attempts to use another name to collect its debts or mislead the debtor to believe a communication is coming from a third-party debt collector when in fact it is actually from the creditor. Id.; Wadlington, 76 F.3d at 107-08. In the case at bar, AAM, on its own letterheads and through its own agents, contacted Plaintiff, his father, and acquaintances. The allegations set forth in Plaintiff's Complaint do not allege that DCH contacted Plaintiff or his father under the guise of a collection agency or an attorney. Thus, the allegations that serve as the basis for Plaintiff's FDCPA claims are actions taken by AAM, not DCH. Accordingly, Plaintiff's FDCPA claims against DCH are dismissed.

**C. Plaintiff's New Jersey Identity Theft Protection Act Claim**

Turning to Plaintiff's state claims, Plaintiff asserts, inter alia, that DCH violated New Jersey's Identity Theft Protection Act ("ITPA") when it supplied AAM with Plaintiff's employment references and their phone numbers. In response, DCH asserts that the ITPA is inapplicable to the case at bar.

Effective January 1, 2006, the IPTA was passed into law with the understanding that "[t]he crime of identity theft has become one of the major law enforcement challenges of the new economy, as vast quantities of sensitive, personal information are now vulnerable to criminal interception and misuse." N.J.S.A. 56:11-44. Recognizing this growing concern, the Legislature stated that "[i]t is. . .a valid public purpose for the New Jersey Legislature to ensure that the Social Security numbers of the citizens of the State of New Jersey are less accessible in order to detect and prevent identity theft." Id. Pursuant to the ITPA, a consumer victimized by identity theft (1) may place a security freeze on his consumer report; (2) cannot be denied credit by a creditor based solely on the instance of identity theft; and (3) may contact the police to report an

identity theft crime. N.J.S.A. 56:11-44 et seq.

Here, Plaintiff argues that DCH was obligated under the ITPA to destroy any personal information that it may have obtained through Plaintiff's employment with DCH in 2004. However, as correctly pointed out by DCH, Plaintiff's argument relies on a provision of another New Jersey statute, the New Jersey Consumer Fraud Act, which provides, in part, that "[a] business. . .shall destroy, or arrange for the destruction of, a customer's records within its custody or control containing personal information, which is no longer to be retained by the business." N.J.S.A. 56:8-162. Thus, Plaintiff is unable to sustain a cause of action under the ITPA because the Act does not prohibit the misconduct alleged in Plaintiff's Complaint.[1] Accordingly, Plaintiff's ITPA claim is dismissed.

**D. Intrusion on Seclusion Claim**

Plaintiff also asserts a cause of action for invasion of privacy by an unreasonable intrusion upon his seclusion by DCH. Specifically, Plaintiff alleges that DCH's disclosure of his employment references from his employment application to AAM, a third party, was unreasonable and constitutes a violation of his privacy. In response, DCH contends that Plaintiff voluntarily disclosed these employment references to DCH, waiving any privacy interest he may have in his employment application.

At common law, courts have long recognized several causes of actions arising from the right to privacy,[2] including intrusion upon seclusion. N.O.C., Inc. v. Schaefer, 197 N.J.Super. 249, 254

---

[1] In dismissing Plaintiff's ITPA claim, the Court does not make any rulings or findings with respect to a properly plead claim brought pursuant to the New Jersey Consumer Fraud Act.

[2] A general right to privacy is grounded in article I, paragraph I of the New Jersey Constitution. Hennessey v. Coastal Eagle Point Oil Co., 129 N.J. 81 (1992). Paragraph I states:

8

(Law. Div. 1984) (finding "the right of privacy encompasses the right to be protected from a wrongful intrusion which would outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities."). In recognizing intrusion upon seclusion as a cognizable claim, New Jersey has adopted the Restatement (Second) of Torts definition:

> One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for the invasion of his privacy if the intrusion would be highly offensive to a reasonable person.

Restatement (Second) of Torts 625B (1977); see also Bisbee v. John C. Conover Agency, Inc., 186 N.J.Super. 335 (App. Div. 1982); Castro v. NYT Television, 384 N.J.Super. 601 (App. Div. 2006).

At the crux of an intrusion claim must be an allegation that a plaintiff's personal and private affairs have been pried into by the defendant. Swift v. United Food Commercial Workers Union Local 56, No. L-2428-06, 2008 WL 2696174, at *3 (N.J.Super.A.D. July 11, 2008).  Proof of publication or disclosure to a third party is not required; rather, liability attaches the moment a plaintiff's privacy has been breached, whether it be physical or otherwise.  Bisbee, 186 N.J.Super at 340. Thus, while physical trespass remains the intrusion commonly associated with this tort,

---

> All persons are by nature free and independent, and have certain natural and unalienable rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing, and protecting property, and of pursuing and obtaining safety and happiness.

N.J. Const. Art. I, par. I.  However, an actionable invasion of the common law right of privacy does not necessarily constitute a violation of this general right to privacy found in the New Jersey Constitution.  Kinsella v. Welch, 362 N.J.Super. 143, 157 (App. Div. 2003) ("Therefore, even if some private action could provide a basis for invoking the privacy protections of the New Jersey Constitution, there is no reason to constitutionalize the common law cause of action for invasion of privacy.").

other actions taken without physical contact can give rise to liability. For instance, the invasion may be:

> some other form of investigation or examination into his private concerns, as by opening his private and personal mail, searching his safe or his wallet, examining his private bank account, or by compelling him by a forged court order to permit an inspection of his personal documents.

Restatements (Second) of Torts, 652B comment b (1977). By contrast, no claim exists where a defendant does not intrude upon a plaintiff's personal matters, or the matters the defendant delves into and/or reveals are already public or known. Bisbee, 186 N.J.Super at 340.

In addition, the intrusion must be "highly offensive to a reasonable person," a determination that turns on what a person's reasonable expectation of privacy is with respect to the item or area searched or intruded upon. White, 344 N.J.Super at 222; see also State v. Hempele, 120 N.J. 182, 200 (1990) (holding that "expectations of privacy are established by general social norms."). Thus, an intrusion is not highly offensive "when the [defendant] intrudes into an area in which the victim has either a limited or no expectation of privacy." White, 344 N.J.Super at 222. Notwithstanding a plaintiff's subjective expectations of privacy, a court must determine whether objectively, given the facts and circumstances of the particular case, a person would reasonably believe he has an expectation of privacy. Id.

For example, in White v. White, a plaintiff asserted an intrusion upon seclusion claim against his ex-wife for hiring an outside investigator to copy files from the family computer's hard drive. 344 N.J.Super at 211. The hard drive contained emails sent between plaintiff and his paramour, which the ex-wife later used in the couple's bitter divorce proceeding. Id. In affirming the lower court's dismissal of the plaintiff's intrusion upon seclusion claim, the Appellate Division found

that the plaintiff did not have a reasonable privacy interest in the computer, namely because the plaintiff's children and ex-wife used it regularly:

> Plaintiff lived in the sun room of the marital residence; the children and defendant were in out of the room on a regular basis. The computer was in this room and the entire family had access to it and used it. . .[E]ven subjectively, plaintiff knew his living accommodations were not private; he avers that he did not leave the letter to his girlfriend in plain view.

Id. at 222-23. Even if a plaintiff demonstrates he retained a privacy interest in the area or item searched, a court must weigh the competing interests of the parties to determine whether the defendant's reasons for its intrusion outweigh the plaintiff's right to privacy. See N.O.C., Inc., 197 N.J.Super at 258 (finding that the case law imposes a balancing test in privacy actions where "social need is to be weighed against the individual's right to privacy"); Parish National Bank, 397 So.2d at 1286 ("The reasonableness of the defendant's conduct is assessed by balancing his interest in pursuing his course of conduct against the plaintiff's interest in protecting his privacy."). The legitimacy and importance of a creditor's interest in collecting a debt was not lost on the Louisiana Supreme Court:

> A debtor's right of privacy is subject to the creditors' right to take reasonable steps to collect his debt. The creditor's actions may result in some invasion of the debtor's privacy, but the debtor will be held to have a cause of action only if the steps taken are unreasonable and oppressive, or expose the debtor to public disgrace.

Id. at 567. Thus, "[w]here a defendant's action is properly authorized or justified by circumstance, it may be found reasonable and nonactionable even though it amounts to a slight invasion of the plaintiff's privacy." N.O.C., Inc., 197 N.J.Super at 258 (quoting Parish National Bank v. Lane, 397 So.2d, 1282 1286 (La. 1981)).

11

In the instant matter, Plaintiff contends that DCH surreptitiously re-opened his employment file[3] in order to collect an alleged debt Plaintiff owed.  What is clear is that Plaintiff, in his capacity as a prospective employee of DCH, voluntarily disclosed two employment references to DCH, for the sole purpose of obtaining employment.  DCH does not controvert this assertion nor does it argue that the employment application contained an express waiver of consent.  Instead, DCH asserts that Plaintiff's limited disclosure of his employment application obviates any need for Plaintiff's consent and consequently vitiates his right to privacy in the information contained therein.

Essentially, Plaintiff urges this Court to parse out a limited privacy interest in his employment application for purposes that Plaintiff did not originally contemplate when he disclosed the employment references.  However, the applicable case law indicates that even a limited disclosure of private matters waives a plaintiff's privacy interest entirely.  See e.g., White, 344 N.J.Super at 222; N.O.C., Inc., 197 N.J.Super at 255.  The Court also notes that the information revealed, the names of two references, is not the type of information that one would normally label as a "private matter." Generally a resume or employment application is devoid of sensitive information, and thus, disclosure of which would not constitute an unreasonable invasion into a person's privacy.  Capital City Press v. East Baton Rouge Parish Metropolitan Council, 696 So.2d 562, 567 (La. 1997).   Presumably, Plaintiff took no issue with DCH contacting these references when he applied for a job two years earlier.  However, DCH's employees charged with looking at Plaintiff's employment application to find these references

---

[3]Plaintiff does not allege that any other information, i.e. social security number, was contained in his employment application.  Even if such information was contained therein, Plaintiff does not allege it was revealed by DCH to AAM.

12

could have taken for their own purposes more sensitive information, i.e. a social security number. Such an intrusion would not have been contemplated or authorized by Plaintiff.

Even if this Court assumes arguendo that DCH intruded upon Plaintiff's privacy interest in his employment application, the intrusion was so de minimis as to be outweighed by the countervailing public interest in the speedy and orderly collection of debt.  See Parish National Bank v. Lane, 397 So.2d, 1282 1286 (La. 1981) (finding a judgment creditor who sought a court order to photograph and inspect a debtor's property over the debtor's objection to determine whether it was worth seizing did not unreasonable intrude upon the debtor's seclusion).[4]  Here, DCH has a legitimate interest in collecting the debt owed by Plaintiff arising from his failure to pay for DCH's services. Although such an interest does not condone outrageously intrusive collection measures, it does permit a creditor to take reasonable steps to contact the debtor to arrange payment.  DCH did nothing more than open a file it was already in possession of to retrieve names of individuals who would be aware of Plaintiff's whereabouts.  After making attempts to contact Plaintiff directly with no success, DCH decided to place the debt into collection and assist AAM in tracking down Plaintiff.  Because DCH has a legitimate interest in collecting an overdue obligation, DCH's usage of Plaintiff's employment application for a purpose not previously contemplated by Plaintiff was reasonable under the circumstances.

---

[4]Plaintiff argues that the difference between a judgment creditor and a non-judgment creditor proves dispositive in the case at bar because a non-judgment creditor is not afforded the same measures to collect a debt in N.O.C. Inc. as a judgment creditor.  However, the court in N.O.C. Inc. was not dealing with judgment or non-judgment creditors; rather, the court was faced with a neighboring property owner taking photographs of his neighbor, a fuel oil and waste oil transfer, treatment and storage facility. Ultimately, the court decided that the neighbor defendant's interest in seeing that waste was properly disposed and zoning regulations were being followed outweighed the plaintiff's privacy interest. Nowhere in N.O.C. does the court find that only a judgment creditor may take means to collect a debt that prove minimally intrusive on a debtor's right to privacy.

Accordingly, Plaintiff's intrusion upon seclusion claim is dismissed.

### E. Negligent Training and Supervision Claim

Finally, Plaintiff asserts a negligent training and supervision claim against DCH. Plaintiff's claim arises out of DCH's alleged failure to prevent its employees from exposing Plaintiff's personal information, namely his employment references, to a third party, AAM. Moreover, Plaintiff alleges that DCH's failure to adequately supervise its employees in this capacity was in contravention of its legal duty imposed by the ITPA.

As a threshold matter, Defendant's reliance on the New Jersey Workers Compensation Act ("NJWCA"), N.J.S.A. 34:15-36, as a complete defense, is misplaced. Plaintiff rightfully points out that the NJWCA precludes an employee from suing his employer for causes of action arising out of and relating to the employee's tenure with the employer. See N.J.S.A. 34:15-36 (precluding employees from suing their employers for actions arising during their employment). Here, the allegations giving rise to the present cause of action occurred two years after Plaintiff's employment with DCH was terminated. In addition, Plaintiff's alleged failure to pay for DCH's services is in no way related to Plaintiff's prior employment with DCH. Accordingly, the NJWCA does not bar Plaintiff from asserting his negligent training and supervision claim against DCH.

Alternatively, DCH contends that Plaintiff has failed to allege DCH's legal duty to Plaintiff. In order to properly allege a negligent hiring and supervision claim, a plaintiff must demonstrate that:

> (1) the employer knew or had reason to know of the particular unfitness, incompetence, or dangerous attributes of the employee, (2) the employer could

14

> reasonably have foreseen that these qualities created a risk of harm to other persons, and (3) the employer's negligence and the employee's unfitness or dangerous characteristic proximately caused the injury.

Silvestre v. Bell Atlantic Corp., 973 F.Supp. 475, 486 (D.N.J. 1997) aff'd 156 F.3d 1225 (3d Cir. 1998). Additionally, "before recovery may be had, a duty must exist in law and a failure in that duty must be proved as a fact," an inquiry properly reserved to the court. Johnson v. Usdin Louis Co., Inc. 248 N.J.Super 525, 528-29 (App. Div. 1991) ("The question of duty involves largely a matter of policy and fairness.").

In the instant matter, Plaintiff relies solely on the ITPA as imposing a legal duty on DCH to properly supervise its employees and prevent them from looking at Plaintiff's employment application. However, because this Court has already determined that the ITPA does not apply to DCH in the case at bar, it cannot be said that the aforementioned statute imposes some legal duty on ITPA to safeguard against invasions of Plaintiff's privacy. Without a duty imposed by the ITPA, Plaintiff's claim fails. Alternatively, the foreseeability essential to the creation of a legal duty is glaringly absent in the case at bar. For instance, in Johnson, a plaintiff alleged that an employer was liable for negligent hiring when one of his employees used nitric acid taken from his job to assault his family members. 248 N.J.Super at 529. The court determined the defendant employer had no legal duty to prevent employees from criminally assaulting their family members with nitric acid. Id. Here, Plaintiff does not assert that it was foreseeable that DCH employees would peruse former employee files with some ulterior motive. Thus, because it was not foreseeable to DCH that employees would access Plaintiff's employment file, there can be no legal duty. Accordingly, Plaintiff's negligent training and supervision claim is dismissed.

**F. DCH's Motion to Dismiss AAM's Crossclaims**

DCH also moves to dismiss AAM's counterclaims for indemnification and contribution. In its Answer, AAM asserted two counterclaims against DCH, seeking contribution pursuant to the Comparative Negligence Act, N.J.S.A. 2A:15-5.1 et seq., and the Joint Tortfeasor Contribution Law ("JTCL"), N.J.S.A. 2A:53A-1 et seq, and indemnification. In response, DCH argues that because it bears no liability to Plaintiff, it is not a joint tortfeasor, and as such, cannot be liable for contribution under the JTCL. With respect to the indemnification claim, DCH asserts that AAM has failed to adequately allege a special legal relationship or an express contractual obligation between the parties that is necessary to sustain an indemnification claim. The Court notes that AAM does not oppose this motion.

The JTCL "was enacted to promote the fair sharing of the burden of judgment by joint tortfeasors and to prevent a plaintiff from arbitrarily selecting his or her victim." Bolz v. Bolz, 400 N.J.Super 154, 160 (App. Div. 2008) (internal quotations omitted). The Act requires a party seeking contribution to demonstrate that the party it seeks contribution from is a joint tortfeasor. Prospect Ashley Condominium Ass'n, Inc. v. Lookout Builders, Inc., L-10051-02, 2008 WL 108178, at *2 (N.J.Super.A.D. January 11, 2008) ("The rule is well settled: there must be 'joint liability and not joint, common or concurrent negligence.'" (quoting Farren v. New Jersey Tpk. Auth., 31 N.J.Super. 356, 362 (App.Div.1954)). More simply stated, the defendant must be liable to the principal plaintiff. In Miraglia v. Miraglia, 106 N.J.Super 266, 270 (App. Div. 1969), the Appellate Division stated:

> Prerequisite to relief under the act is a demonstration that the person seeking to enforce the right of contribution, as well as the one from whom contribution is

> sought, are joint tortfeasors. . . .[I]t is incumbent on the contribution claimant in a case such as this to establish a common liability for the wrongful act, neglect or default made the basis of the judgment. . . [H]e cannot prevail unless the injured person also has a cause of action for the tortious injury against the defendant called on for contribution.

In the instant matter, the Court has determined that Plaintiff's claims against DCH should be dismissed. See supra. Clearly, AAM would be unable to demonstrate that DCH is liable for Plaintiff's alleged injuries based on this Court's findings. Accordingly, DCH's motion to dismiss AAM's counterclaim for contribution is granted.[5]

As for AAM's indemnity crossclaims, indemnity can be extended in one of two ways. First, a court may find a party is entitled to indemnification pursuant to an express contract creating such an obligation. Mantilla v. NC Mall Assocs., 167 N.J. 262, 267-68 (2001). Second, a duty to indemnify, also known as common law indemnification, arises where a party seeking indemnification can set forth a sufficient legal relationship between itself and the third party defendant. Dickinson v. Maragal, No. 91-CV-4533, 1993 WL 391328, at *4 (D.N.J. Sept. 28, 1993); Estate of Spencer v. Gavin, No. L-5935-00, 2008 WL 1899196, at *18 (N.J.Super.A.D. April 23, 2008); Hagen v. Koerner, 64 N.J.Super. 580, 584 (App. Div.1960) (finding that common law indemnification arises in legal relationships such as the employee-employer or agency context); Ruvolo v. U.S. Steel Corp., 133 N.J.Super 362, 367 (App. Div. 1975.

---

[5] With regards to AAM's assertion of the Comparative Negligence Act, N.J.S.A. 2A:15-5.1 et seq., DCH argues that the Act "does not create any affirmative right of contribution amongst defendants but rather addresses liability as between a plaintiff and a defendant." DCH's Brief, pg. 18. The Court agrees. The CNA "requires the apportionment of fault where "the question of liability is in dispute. . . .The apportionment of responsibility for a plaintiff's injury is based on 'each party's relative degree of fault.'" Dixon v. CEC Entertainment, Inc., No. A-2010-06T1, 2008 WL 2986422, at *22 (N.J.Super.A.D. August 06, 2008).

In the instant matter, AAM does not allege in its Answer that DCH was contractually obligated to indemnify AAM from any claims. Therefore, this Court finds that AAM is not entitled to indemnification by way of express agreement. In addition, AAM fails to allege any special legal relationship, such as an agency relationship, that would confer a duty of indemnity on DCH. See Hagen, 64 N.J.Super at 584 (finding a duty to indemnify arising out of an agency relationship). Because AAM fails to allege sufficient facts that give rise to indemnification under New Jersey law, AAM's crossclaims fail. Accordingly, DCH's motion to dismiss AAM's crossclaims is granted.

**G. DCH's Motion for Sanctions**

In addition to moving for dismissal of Plaintiff's claims and AAM's crossclaims, DCH also moves for sanctions pursuant to Federal Rule of Civil Procedure 11. Rule 11 provides:

> By presenting to the court ... a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,
>
> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
>
> (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

Fed.R.Civ.P. 11(b). Although Rule 11 is reserved for only "exceptional circumstances," Gaiardo

v. Ethyl Corp., 835 F.2d 479, 483 (3d Cir. 1987), bad faith is not required. In re Prudential Ins. Co. America Sales Practice Litigation Agent Actions, 278 F.3d 175 (3d Cir. 2002). "The Rule seeks to strike a balance between the need to curtail abuse of the legal system and the need to encourage creativity and vitality in the law." Id. at 483-84. When reviewing a party's motion for sanctions, a court must apply "an objective standard of reasonableness under the circumstances." Signorile v. City of Perth Amboy, 523 F. Supp. 2d 428, 435 (D.N.J. 2007) (quoting Martin v. Brown, 63 F.3d 1252, 1264 (3d Cir. 1995)). In addition, Rule 11 contains specific provisions requiring a party seeking sanctions to notify his adversary of the possibility of such sanctions and the reasons for such a motion. Martin, 63 F.3d at 1264; Corino, 27 F.3d at 64 ("The party sought to be sanctioned is entitled to particularized notice including, at a minimum, 1) the fact that Rule 11 sanctions are under consideration, 2) the reasons why sanctions are under consideration, and 3) the form of sanctions under consideration.").

DCH argues that Plaintiff and his counsel filed an amended Complaint without legal basis, failing to investigate and research the applicable case law. At the onset, the Court finds that DCH has satisfied Rule 11's notice requirements. On May 19, 2008, DCH's lawyer sent Plaintiff's lawyer a letter notifying Plaintiff that if he did not withdraw his amended complaint within 21 days, DCH would file a Rule 11 motion for sanctions. Certification of Peter S. Pearlman, Ex. A. Turning to the merits of DCH's motion, the Court "must judge the alleged improper conduct by what was reasonable to believe at the time the pleading, motion or other paper was submitted." Signorile, 523 F. Supp. 2d at 435 (denying the defendants' motion for Rule 11 sanctions even though the Court dismissed the case on summary judgment grounds in the defendants' favor).

Although this Court finds in favor of DCH's Motion to Dismiss on all of Plaintiff's claims, this Court does not find that Plaintiff's Amended Complaint was frivolous, and as such, finds that sanctions are improper in the case at bar.  As stated supra, courts have extended liability to creditors under the FDCPA in very limited circumstances, including situations where the line between creditor and collection agency has been completely blurred. Plaintiff chose to pursue his FDCPA claim on such a theory which this Court does not find sets forth a viable claim under the FDCPA given the applicable case law and the facts and circumstances of Plaintiff's allegations. Nonetheless, asserting an FDCPA claim under these facts and circumstances is not outside the contours of reasonableness. Moreover, Plaintiff's state law claims are nonfrivolous as well. Specifically, this Court finds that Plaintiff's error in asserting the ITPA as applicable in the instant matter is not of the type that would give rise to Rule 11 sanctions.  See Briehler v. American Continental Property of New Jersey, Inc., No. 89-4761, 1991 WL 117801 (D.N.J. July 13, 1991) (denying the defendant's motion for sanctions under Rule 11 for an inadvertent error in the plaintiff's complaint).   Thus, the Court concludes that the conduct of Plaintiff's counsel was not so egregious as to violate Rule 11.  Accordingly, DCH's motion for sanctions is denied.

### III. CONCLUSION

For the foregoing reasons, DCH's motions to dismiss Plaintiff's claims and AAM's counterclaims are granted.  Further, DCH's motion for Rule 11 sanctions is denied.

Dated December 17, 2008                    /s/ Freda L. Wolfson
                                           Freda L. Wolfson, U.S.D.J.